UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VANN SEAWELL, et al.,

          Plaintiffs,

     v.                                          Case No. C-1-08-614

ROBERT BROWN, ESQ., et al.,

          Defendants.

**ORDER**

This matter is before the court upon the parties' cross-motions for summary judgment (docs. 51, 55). Each side has filed proposed findings of fact and conclusions of law in support of their motion, which the opposing side has highlighted as true, false or irrelevant (docs. 65, 78).

**I.  Introduction**

Plaintiffs bring this action under §§ 502(a)(2) and (3) of the Employee Retirement Income and Security Act (ERISA), 29 U.S.C. §§ 1132(a)(2) and (3), and under state law for legal malpractice. Plaintiffs are UNITE HERE National Health Fund ("Health Fund"), an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. § 1001, et seq.; Hotel and Restaurant Employees Pension Fund of the Hotel, Motel, Restaurant and Bartenders Union, Local 12, UNITE HERE ("Pension Fund"), a Taft-Hartley multi-employer benefit plan governed by a Board of Trustees comprised of an equal number of union and management Trustees of the Pension Fund; Vann Seawell, Chairman and Trustee of the Pension Fund; Harvey A. Nathan, Secretary Treasurer and Trustee of the Pension Fund; and the individual Trustees for the Health

Fund.[1] Defendants are Robert Brown, Esq., an attorney with his principal place of business in Cincinnati, Ohio, and The Brown Firm, L.P.A., a legal professional association with its principal place of business in Cincinnati. Plaintiffs allege in the amended complaint that the individual plaintiffs are all fiduciaries as defined under ERISA § 3(21)(a), 29 U.S.C. § 1002(21)(a). Plaintiffs further allege that the plaintiff Funds and defendants had an attorney-client relationship dating back more than a decade and that defendants functioned as fiduciaries to the Funds in a variety of capacities.

The amended complaint alleges that defendants committed a number of breaches of fiduciary duty and/or legal duties which are set forth in the court's Order dated September 9, 2010 (doc. 81). To briefly summarize, plaintiffs allege that defendants failed to advise the Trustees as to certain matters in connection with the Funds and they took improper actions while acting in a fiduciary capacity in relation to the Funds. Plaintiffs allege that as a direct result of defendants' breaches of fiduciary duty and/or legal negligence, the Funds have incurred significant legal costs, costs of a third management trustee, filing fees for bringing the Funds into compliance with applicable state and federal laws (including the filing of a Voluntary Corrective Procedure with the Internal Revenue Service), losses stemming from purported imprudent bond purchases in November 2006, costs stemming from failure to collect contributions from participants and interest and liquidated damages from delinquent employers, losses for disbursements of legal fees which defendants had not earned, and losses in connection with liability for a five-year lease of office space which the Trustees had not approved.

---

[1]The parties refer to the Health Fund and the Pension Fund as both "the Funds" and "the Plans," and the terms are used interchangeably in this order.

## II. Undisputed Facts

1. Robert Brown is an attorney in Cincinnati, Ohio, who first became involved with UNITE HERE Local 12 Pension and Health and Welfare Funds in 1980. He provided services to the Funds until November 2006.

2. The former UNITE HERE Local 12 Health and Welfare Fund merged with the National Health Fund in 2008. The National Health Fund is an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1001, et seq.

3. The UNITE HERE Local 12 Pension Fund is an "employee pension plan" within the meaning of ERISA, 29 U.S.C. § 1001, et seq.

4. The Funds are both known in the law as "jointly-administered" Taft Hartley funds.

5. Brown provided the following services: advice as to changes in benefits, advice as to compensation to the Fund employees, arranging for the transition from one administrator to another, preparation of initial drafts of minutes from Trustee meetings, and advice as to general business transactions in which the Funds were engaged, such as lease renewals and equipment purchases.

6. Throughout the entire time Brown was providing his services to the Funds, another attorney was always involved with providing legal services and advice. The attorney who initially did so was Jerry Venn, followed by Mike Alexander and then Jim Robinson.

7. The law firm of Katz, Teller, Brant & Hild (Katz Teller) prepared certain amendments to the Pension Plan. Katz Teller amended the Pension Plan as though it were a single-employer plan rather than a jointly-administered Taft Hartley plan.

           The Pension Fund Trustees had to take action to correct the error.  The Trustees sought to correct the error through the Internal Revenue Service's Voluntary Correction Procedure.

8. Brown never provided legal advice or services to plaintiffs Vann Seawell, Harvey Nathan, the National Health Fund, or any of the National Health Fund's 26 Trustees.

9. In 1985, Brown became investment manager for the Funds at the request of the Trustees.  The Funds granted Brown complete authority to direct the investment, sale and reinvestment of assets of the Funds.  Brown never received compensation for his investment management services.

10. Brown engaged Ross Sinclaire and Associates (Ross Sinclaire), an outside brokerage firm, to act as investment broker for the Plans without soliciting other bids or considering other firms.  Ross Sinclaire was involved in every securities transaction from 1985 through 2006.

11. Brown became a trustee to the Plans in 2005 and served in that role from 2005 to November 28, 2006, when he was terminated from all positions.

### III.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all claims against them.  Defendants acknowledge that Brown served in three roles with respect to the Pension Plan and the Health Fund beginning in 1980.  First, he served as counsel to the Management Trustees and performed certain legal services for the Trustees, although defendants claim he was not retained by either Fund to act as Fund counsel, he did not hold himself out as an expert in ERISA, and he did not

provide either Fund with any advice relative to ERISA compliance or guidelines.  Rather, defendants allege he provided the following services:

- He gave advice as to changes in benefits;
- He gave advice as to compensation to the Fund employees;
- He arranged for the transition from one administrator to another;
- He gave advice as to general business transactions in which the Funds were engaged, such as lease renewals or equipment purchases; and
- He prepared initial drafts of minutes from Trustee meetings.

Second, Brown served as Trustee from 2005 until November 28, 2006.  Third, Brown served as investment manager of the Funds.

Defendants argue that plaintiffs lack standing to assert a legal malpractice claim against Brown in his capacity as counsel for the Management Trustees and the Pension Plan because he did not owe a duty to any of the plaintiffs identified in the amended complaint except the Local 12 Pension Fund.  Defendants claim that neither Harvey nor Seawell was ever Brown's client, and Brown never maintained an attorney-client relationship with the 26 individual Trustees as they did not become Trustees of the National Health Fund until after Brown's termination.  Defendants further allege that the National Health Fund did not merge with UNITE HERE Local 12 until more than two years after Brown was removed, and the latter's malpractice claim cannot be assigned to the post-merger entity.

In addition, defendants argue that the breaches of duty plaintiffs identify address matters that Brown has testified were outside the scope of his retention, and the Trustees who served during the period of Brown's retention have provided no testimony to rebut his sworn testimony and establish a prima facie case on the issues of causation and reliance.  Defendants contend that plaintiffs' expert, James Singer, has simply restated each allegation of the amended complaint and summarily concluded that Brown's actions were a breach of his professional duties.  Defendants

5

rely on the testimony of their expert, Dale Vlasek, to establish that Brown did not deviate from the standard of care. They further allege that in the absence of evidence of damages, a legal malpractice claim cannot exist.

Defendants also argue that Brown did not breach any fiduciary duties as a Trustee. They contend that plaintiffs cannot establish a breach of duty because they have not presented any expert testimony on this particular matter.

Finally, defendants argue that Brown did not breach his fiduciary duties as an investment manager. They claim that there is no competent, reliable evidence that Brown's investments were imprudent or caused damage to the Funds.

In response, plaintiffs clarify that they do not submit that Brown breached fiduciary duties in his role as counsel but they instead claim he breached his fiduciary duties in his roles as investment advisor, investment manager and trustee. They claim that the duties he breached in his role as attorney were the duties of care owed to his clients, the Trust Funds. Although plaintiffs concede that the Trustees were not defendants' clients, they allege that the Funds and their current Trustees have standing to pursue legal malpractice claims against Brown on behalf of the Funds because these entities were his clients. Plaintiffs rely on Brown's legal expert, Vlasek, for the proposition that Brown owed legal duties to the Plans themselves rather than to a particular set of Trustees.

As to the merits of the legal malpractice claim, plaintiffs allege that they have proven both proximate cause and reliance. They argue that the evidence shows Brown's alleged negligent conduct was the direct and proximate cause of actual harm to the Plans because his failure to advise the Plans with respect to technical compliance issues under both ERISA and the Internal

6

Revenue Code resulted in (1) the need to completely restate the Pension Plan to seek determination of correction status under the Internal Revenue Service's Voluntary Correction Fiduciary Program, and (2) the need to incur substantial expense to bring the Health and Welfare Plan's provisions into technical compliance under applicable laws.

Turning to the ERISA claims, plaintiffs dispute defendants' contention that expert testimony is necessary to establish a breach of fiduciary duty by Brown in his role as trustee to the Funds. Plaintiffs further contend that Brown's fiduciary breaches as investment manager entail far more than just investment losses.

### IV.  Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on all claims they bring against defendants.  They generally claim that Brown served in three roles: (1) as attorney to the Plans; (2) as investment advisor to the Plans; and (3) as trustee to the Plans.  They claim he breached his fiduciary duties to both Plans by (1) failing to follow Plan documents; (2) failing to amend Plan documents; and (3) failing to exercise prudence in the management of the Funds.  In addition, they claim he was responsible for failures particular to each Plan. Plaintiffs allege that Brown's actions caused extensive damage to the Funds because upon the discovery of the many deficiencies in the Plan documents, extensive legal fees were incurred to amend the Plans to appropriately reflect Taft-Hartley requirements, to bring the Plans into compliance with current law, and to receive a Plan determination from the IRS and participate in a Voluntary Correction Procedure with the IRS in order to avoid extensive penalties for the failures of the Pension Plan.  Plaintiffs allege that Brown's malpractice caused damages totaling $165,822.77 and his poor investments caused damages in the amount of $11,183,104.

Defendants argue that the Court should overrule plaintiffs' motion for summary judgment as a sanction for plaintiffs' failure to file proposed findings of fact and conclusions of law in support of the motion as required by the Court's Scheduling Order.[2]  In addition, defendants claim that plaintiffs have failed to cite to any admissible evidence so as to allow this court to grant the motion for summary judgment.

In opposition to the legal malpractice claim, defendants argue that the undisputed, competent evidence demonstrates that Brown served in only a limited role as an attorney and he met the standard of care.  They note that Brown served only as counsel for the Management Trustees and the Local 12 Pension Plan and throughout the entire time he provided this service, there was always another attorney involved with providing legal services and advice.  They contend that Katz Teller provided legal advice relative to ERISA compliance and amendments to the Plan and is liable for mistakes in the amended Pension Plan documents.  Further, they allege there is no specific evidence as to the laundry list of violations for which Brown is allegedly responsible.  They contend there is no testimony that Brown ever violated any ethical rules of professional conduct.  Defendants further allege there is no competent or admissible evidence that Brown caused damage to the Funds.  Defendants also claim there is no evidence that Brown breached any duties while acting as an employer trustee from November 2005 to November 2006.

### V.  Defendants' Motion for Leave to File Sur-Reply

Defendants move for leave to file a sur-reply in light of the court's order of September 9,

---

[2] Plaintiffs have since filed proposed findings of fact and conclusions of law, so this objection is not well-taken.

2010, following a Daubert hearing held on July 20, 2010. The order excluded Gerald Clarke's testimony "insofar as Clarke seeks to offer an opinion as to Brown's alleged breaches of fiduciary duty and any damages to the Pension Plan and the Health Fund purportedly resulting from those breaches." Doc. 81. Defendants argue in their sur-reply that consistent with the court's ruling, they are entitled to summary judgment as a matter of law on plaintiffs' investment-related claims and their damages claim of $11,183,104.00 for investment-related losses.

Plaintiffs oppose defendants' motion for leave to file a sur-reply. They claim the sur-reply does not respond to anything plaintiffs allege in their reply in support of summary judgment, the court need not be apprised of the impact of Clarke's testimony on summary judgment issues, and the exclusion of Clarke's testimony does not preclude plaintiffs from proving at trial losses flowing from Brown's alleged fiduciary breaches.

The court's order excluding opinions by Clarke does not preclude plaintiffs from seeking to prove through other evidence that the Funds incurred damages as a result of the breaches of fiduciary duty which they allege defendants committed. The court therefore will not allow defendants to file a sur-reply in an effort to narrow the damages to those allegedly incurred as a result of the claimed malpractice. The motion for leave to file a sur-reply is not well-taken and is **DENIED**.

## VI. Opinion

**1. Legal Malpractice Claim**

**A. Law on Legal Malpractice**

To establish a cause of action for legal malpractice under Ohio law, a plaintiff must show

(1) that the attorney owed a duty or obligation to the plaintiff, (2) the attorney breached that duty or obligation to the plaintiff and failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting loss. *Vahila v. Hall,* 77 Ohio St.3d 421, 421-422, 674 N.E.2d 1164, 1165-1166, syll. (1997) (following *Krahn v. Kinney,* 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989)).

The practice of law includes advice to clients and any action on a client's behalf that is connected with the law. *Landis v. Hunt,* 80 Ohio App.3d 662, 669, 610 N.E.2d 554, 558 (1992). An attorney-client relationship exists when an attorney advises others as to their legal rights or a method to be pursued. *Id*. (citing *In re Unauthorized Practice of Law in Cuyahoga Cty*., 175 Ohio St. 149, 192 N.E.2d 54 (1963)). An essential element of the attorney-client relationship is trust and confidence such that the information exchanged was so confidential as to invoke an attorney-client privilege. *Id*. (citing Ohio Rev. Code § 2317.021).  Moreover, a claim for legal malpractice will lie only where the client incurred damages which were directly and proximately caused by the malpractice. *Northwestern Life Ins. Co. v. Rogers,* 61 Ohio App.3d 506, 512, 573 N.E.2d 159, 163 (1989).

Expert testimony is necessary to establish a claim of legal malpractice "based on an alleged failure to exercise the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated . . ." *Harrell v. Crystal,* 81 Ohio App.3d 515, 525, 611 N.E.2d 908, 914 (1992).  There may, however, be cases "which are so patently obvious as to negate [the] requirement." *Northwestern Life,* 61 Ohio App.3d at 512, 573 N.E.2d at 163.

### B.  Standing Issue

Plaintiffs contend that they have standing to bring their legal malpractice claim because

Brown served as counsel to the Funds, any legal malpractice committed by defendants occurred with respect to the Trust Funds and the Plans they sponsored, the causes of action for legal malpractice belong to the Plans, and the Trustees are simply asserting those causes of action on behalf of the Plans. Defendants do not dispute that they owed a legal duty to the Local 12 Pension Fund. Therefore, the Pension Fund has standing to bring a legal malpractice claim. Furthermore, the authorities defendants cite do not establish that the National Health Fund is precluded from asserting a legal malpractice claim simply because UNITE HERE Local 12 merged with this plaintiff after defendants had discontinued their representation of the Plan. The National Health Fund is pursuing a claim for injury that arose during the period of defendants' retention. Allowing the Health Fund to pursue the claim is not tantamount to assigning the rights and obligations of a personal contract to an unrelated third party as defendants argue. Defendants' argument that plaintiffs lack standing is not well-taken.

**C. Statute of Limitations**

Defendants contend in a footnote that the one-year statute of limitations for legal malpractice as to one alleged error - the incorrect drafting of the 2003 revised trust documents created for the Pension Plan - ran in 2006 before this action was filed. ***See Omni-Food & Fashion, Inc. v. Smith***, 38 Ohio St.3d 385, 387, 528 N.E.2d 941, 943 (1988) (a cause of action for legal malpractice accrues and the one-year statute of limitations begins to run when either the client discovers, or in the exercise of reasonable diligence should have discovered, the resulting damage or injury, or whenever the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.) Defendants have not, however, shown that a letter to Plan Administrator Athena Sullivan in 2005 alerting her to the error was sufficient to

place the Pension Plan on notice of possible malpractice by defendants. The court therefore will not grant summary judgment on this ground.

**D. Merits of the Malpractice Claim**

Plaintiffs claim that Brown should be held to the standard of other attorneys who represent Taft-Hartley jointly-administered plans. Plaintiffs rely on the report of their expert, James Singer, to establish that Brown did not satisfy the standard of care and has thus breached the duty he owed to plaintiffs. Plaintiffs assert that Singer has opined that Brown acted as primary legal counsel to the Plan, he consulted on multiple ERISA matters, and he failed to meet the standard of care by failing to provide appropriate advice to the Plans. Plaintiffs allege that defendants' own expert, Vlasek, admitted that Brown had a duty to assist the Trustees as Plan fiduciaries, some of the advice they needed would have required ERISA expertise, and Brown by his own admission lacked ERISA expertise.

Defendants respond that Brown provided only limited legal services to the Management Trustees and the Pension Plan. They contend that while plaintiffs point to Board minutes identifying Brown as an attorney present at the meetings as proof that he served as attorney to the Plans, the minutes list other attorneys as being in attendance at these same Board meetings. As additional proof, they also point to Deposition Exhibit 7, Brown's statements to the Funds' auditors contained in a 1981 letter, stating that defendants' representation of the Funds had been limited to specific matters. Defendants dispute plaintiffs' claim that Vlasek opined that Brown owed a duty to the Trustees and the Trust Funds, claiming that Vlasek instead indicated that it was unclear who served as counsel to the Plans. See Deposition Exhibit 138.

In addition, defendants allege that plaintiffs' claims should be directed at Katz Teller

12

rather than Brown because at all times, it was Katz Teller who provided legal advice relative to ERISA compliance and Plan amendments.  Defendants claim that Brown had no responsibility for Katz Teller's error in drafting the 2003 revised Pension Plan trust documents for a single-employer plan rather than a Taft-Hartley multi-employer Plan.  Furthermore, defendants contend that there is no testimony to refute Brown's sworn testimony and that Vlasek has opined that Brown met the standard of care.  Finally, defendants argue that plaintiffs have provided no testimony to establish that Brown violated any Rules of Professional Conduct, and in particular Ohio Rule of Professional Conduct 1.7, relating to conflicts of interest.  Defendants deny that Brown had an inherent conflict of interest as alleged by plaintiffs, who claim his interest in representing contributing employers to the Plan was often to help them limit employer contributions owed to the Plan whereas his role as attorney to the Plan was to help maximize contributions to the Plan.  Defendants contend that Singer testified at his deposition that he did not know if there was an ethical rule that prohibited Brown from serving "as counsel for certain fund services" and as trustee. Singer depo., p. 26.  Defendants also allege that the Ohio Rules of Professional Conduct were not in force when Brown was involved with the Plans as they were not adopted until February 2007.

       The record is not clear regarding who defendants represented as counsel and what legal services they provided.  There are disputed questions of material fact on this point which require further development of the record and which cannot be resolved on summary judgment.  There are also disputed questions of fact as to whether defendants breached any duty of care which they owed as counsel to the Plans.  These issues must be resolved at trial.

       This leaves the question of damages.  Plaintiffs claim that the costs which are a direct

13

result of Brown's alleged failure to meet the standard of care for an attorney advising a Taft-Hartley fund total $165,822.77. Plaintiffs allege that these damages resulted from the need to amend the Plans after many deficiencies were discovered in the Plan documents so as to bring the Plans into compliance with current law. In support of their damages calculation, plaintiffs have submitted professional fee invoices from the following entities: "Dowd, Bloch and Bennett," in amounts which plaintiffs represent total $111,465.84 (doc. 55, exh. F); "Schulte Roth & Zabel LLP" to Vann Seawell, in amounts which plaintiffs represent total $14,685.13 (doc. 55, exh. G); and Harvey Nathan, who plaintiffs identify as a "public trustee and independent fiduciary," in amounts which plaintiffs represent total $23,671.80 (exh. H). Plaintiffs also contend that the filing fees for the Voluntary Correction Program filing were $16,000.

Defendants challenge plaintiffs' claimed damages. They allege that expert testimony is necessary to establish damages in a legal malpractice case. They deny that they are responsible for the penalties incurred due to the 2003 agreement being improperly drafted as a single employer plan and the need to file a submission with the IRS. They further note that while some of the legal bills attached to plaintiffs' motion are for the services of a professional trustee hired following Brown's removal, there is no evidence that the trustee was hired due to any failures attributable to them.

Initially, the court finds that defendants have not supported their claim that expert testimony is necessary to establish the damages for plaintiffs' legal malpractice claims. Rather, all of the citations defendants offer in support of their position relate to the reasonableness of attorney fees rather than damages for legal malpractice. Conversely, plaintiffs have not shown they are entitled to the damages they seek. They have not submitted an affidavit to lay a

foundation for the unauthenticated documents they have submitted in support of their damages claim. Moreover, the invoices do not show that the services rendered were to correct specific Plan deficiencies or, if so, who was responsible for those deficiencies. Similarly, plaintiffs have not tied liability for the $16,000 filing fee for the Voluntary Correction Program to defendants. Furthermore, it is not clear from Nathan's invoice that the services he rendered were in connection with the matters at issue in this lawsuit. Accordingly, while defendants have not shown that they are entitled to summary judgment on the legal malpractice claim, neither have plaintiffs established the merits of their claim or their entitlement to these damages. Thus, the legal malpractice claim must be resolved at trial.

**2. ERISA Claims**

**A. Governing ERISA Law**

"[A]nyone who exercises authority over an employee benefit plan can properly be held an ERISA fiduciary because that term was intended to be interpreted broadly by Congress . . ." *In re Cardinal Health, Inc. ERISA Litigation*, 424 F.Supp.2d 1002, 1017 (S.D. Ohio 2006) (citing *In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 826 (S.D. Ohio 2004) (Marbley, J.) (citing *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir.1988)). "[A] person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." *Id.*

The ERISA prudent man standard of care is set forth in § 1104(a)(1), which imposes three general duties: (1) a "duty of loyalty" pursuant to which "all decisions regarding an ERISA plan 'must be made with an eye single to the interest of the participants and beneficiaries;'" (2) the "prudent person" obligation, which imposes "an unwavering duty" to act both "as a prudent person would act in a similar situation" and "with single minded devotion" to those same plan

participants and beneficiaries; and (3) the duty to "act for the exclusive purpose" of providing benefits to plan beneficiaries. *Id.* at 1017 (quoting *Berlin v. Michigan Bell Tele. Co.*, 858 F.2d 1154, 1162 (6th Cir.1988); *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.1982)).

Although ERISA's duty of loyalty requires fiduciaries to discharge their duties with respect to a plan "solely in the interest of the participants and beneficiaries," § 1104(a)(1), the trustee under ERISA may wear different hats. *Id*. (citing *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000). ERISA requires, however, "that a fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram*, 530 U.S. at 224 (citing *Varity Corp. v. Howe*, 516 U.S. 486, 489 (1996)).

ERISA makes fiduciaries liable for breaches of their duties and specifies the remedies available against them. *In re Cardinal Health,* 424 F.Supp.2d at 1023 (citing *Mertens v. Hewitt Assocs*., 508 U.S. 248, 251 (1993) (citing 29 U.S.C. § 1109(a)). The statute provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate including removal of such fiduciary . . . .

A fiduciary may be held personally liable to a plan for any losses to the plan resulting from his breach of duty. *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995) (citing 29 U.S.C. § 1109(a)). Upon finding a breach of fiduciary duty resulting in a loss to the plan, the court may award damages and award prevailing parties their reasonable and necessary fees and costs incurred in pursuing the breach of fiduciary duty claims. *In re Cardinal Health,* 424 F.Supp.2d at 1023 (citing 29 U.S.C. § 1132(g)).

16

**B. Plaintiffs' Claims**

Plaintiffs claim that Brown has admitted that he acted as a fiduciary in his roles as an investment advisor and trustee to the Plans. Plaintiffs allege that Brown breached his duty of loyalty under § 1104(a)(1)(A) and the prudent man standard of care set forth in § 1104(a)(1)(B). They allege that Brown breached his fiduciary duties to both Plans by failing to follow the Plan documents as follows:

- In March 2006, he unilaterally directed the Plan administrator to execute a five-year extension on the lease for Fund offices.

- Brown was responsible for a "laundry list of failures to act in compliance with plan documents."

- Brown failed to amend Plan documents as required by law. Following appointment of the new union trustees, amendments were adopted to correct problems in plan documents regarding quorum and voting provisions, employer contributions, definitions of parties, and actions of trustees.

- Brown did not exercise prudence in managing the Funds.

- Brown failed to have a collection policy for the Plans, failed to have systematic audits, failed to properly vet service providers, and failed to monitor service providers.

Plaintiffs allege that Brown was responsible for the following failures of the Health and Welfare Plan:

- The Plan failed to have a health and welfare consultant to advise it and thus ran afoul of federal law and regulations as well as its own governing documents.

- No systematic collection policy existed and the Fund lacked a funding and investment policy.

- No arrangements had been made with preferred provider organizations or with other managed care entities that would result in lower rates for participants and the Plan.

- The Plan failed to comply with the Health Insurance Portability and Accountability Act of 1996.

- The Plan failed to circulate necessary notification to participants.

- The Plan allowed the appointment of employer trustees only by the Cincinnati Culinary Counsel, which became defunct, so that there was no method for the appointment of employer trustees.

Plaintiffs claim that Brown was responsible for the following failures particular to the Pension Plan:

- He failed to notice, advise the trustees of, and communicate to outside counsel errors in a revised trust document which outside counsel Katz Teller had prepared and which was put in place in 2003. The restated Plan was for a single employer plan, not a Taft-Hartley plan; the error was discovered by Plan actuaries in 2005; and Brown did not notice or advise the trustees of the error by outside counsel at any time prior to the actuary's discovery of the error.

- Mismanagement which led to the Plan becoming overfunded and benefits not being adjusted relative to that funding jeopardized employer interests and the need for contributions to be tax-deductible.

- Because of the lack of a collections policy, in 2003 and 2004 delinquencies of over $30,000 had not been collected or pursued.

- In October 2002, Brown, a party-in-interest under ERISA §3(14)(A), engaged in a prohibited transaction with the Plans in violation of ERISA § 406(a). While acting as investment advisor and manager, Brown miscalculated the amount of cash on hand to complete a stock transaction; the Plans did not have sufficient funds to consummate the transaction; Brown made a loan to the Plans to cover the purchase price of the equities; and the Plans repaid the proceeds of the later sale of the securities to Brown. This purportedly was a per se violation of 29 U.S.C. § 1006, so a causal connection between the transaction and loss to the Plans is not required; rather, once a violation is shown, Brown has the burden to demonstrate that the transaction did not occur or that it was exempt from § 406.

While defendants do not dispute that Brown acted as an Employer Trustee from November 2005 to November 2006, they claim there is no evidence or testimony that he breached any duty in this role during that period of time. Defendants contend that the only expert retained by plaintiffs to testify on breaches in areas other than investments is Singer, and he testified that he was not rendering an opinion on whether Brown breached his ERISA fiduciary duties.

18

**C.  Resolution**

Plaintiffs have presented sufficient evidence to raise genuine issues of material fact as to whether defendants committed one or more of the alleged breaches and whether the Plans were damaged as a result.  Because there are a number of disputed factual issues that bear on resolution of the breach of fiduciary duty claims, summary judgment in favor of either party on these claims is not warranted.

### VII.  Conclusion

For these reasons, defendants' motion for leave to file a sur-reply (doc. 82) is **DENIED.**  The parties' motions for summary judgment (docs. 51, 55) are **DENIED**.  The case shall proceed to trial in accordance with the schedule previously established by the court.

**IT IS SO ORDERED.**

S/ Herman J. Weber<br>
HERMAN J. WEBER, SENIOR JUDGE<br>
UNITED STATES DISTRICT COURT